Frank **ALVAREZ, Jr.,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 44753.

Court of Criminal Appeals of Texas.

April 12, 1972.

Arthur L. Lapham of Hartman & Lapham, Victoria, Ted Dunnam and Mary Anne Dunnam, Port Lavaca, for appellant.

Robert J. Seerden, Dist. Atty., and D. F. Martinak, Asst. Dist. Atty., Victoria, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of unlawful sale of a narcotic drug, to-wit: marihuana. The punishment was assessed by a jury at five years.

Appellant brings three grounds of error. First, we will discuss his contention that "The District Court erred in failing to submit to the jury, for its consideration, the

defendant's second requested charge inquiring as to whether or not the undercover agent was an accomplice, and, if so, his testimony must be corroborated."

The record reflects that some time during the early evening hours of June 5, 1970, Jay Pietsch contacted Jesse Ramirez, the assistant manager of the investigations division of the Victoria Police Department. Officer Ramirez introduced Pietsch to Officer Charles L. Luna. Officer Luna, who was dressed in casual civilian clothes, and Pietsch left the police station and drove around Victoria in a blue and white van for several hours looking for the appellant, who was known by Pietsch, but not by Officer Luna. As they cruised about the city Pietsch would, from time to time, get out of the van and go into various places in search of the appellant to get him to make a sale of marihuana.

After searching for the appellant and being unable to locate him, Officer Luna discontinued the search and went home at approximately 12:30 A.M. on June 6, 1970. Pietsch apparently continued his search for the appellant and called Officer Luna and arranged to meet him at the Lone Tree Shopping Center and appeared there with appellant at approximately 3:15 A.M. on that date. When Officer Luna drove up to the location, the appellant entered the van and sat down. At this time Officer Luna asked him, "What you got?" And the appellant ". . . pulled from underneath the front of his shirt a bag, small baggie." He handed the bag to Officer Luna and said: "It has a lot of seed in it, but it's good grass." After some negotiations about the price, Officer Luna paid the appellant $13.00 for the marihuana.

The record is clear that the appellant approached Officer Luna and advised him that he had some "grass", showed the same to Officer Luna and then sold the same to him for $13.00. The record further reflects that the appellant told Officer Luna that he could get up to 150 pounds of marihuana at a later date. This court has long held that an undercover agent is not an accomplice as long as he does not bring about the crime, but merely obtains evidence to be used against those engaged in the traffic. E. g., Ikner v. State, Tex.Cr.App., 468 S.W.2d 809; Alexander v. State, 168 Tex.Cr.R. 288, 325 S.W.2d 139.

Next, appellant contends that his second motion for continuance should have been granted in order for him to obtain the Witness Pietsch as a material witness for his defense.

The record reflects that on September 8, 1970, the trial court conducted hearings on motions filed by the appellant and a motion was granted for him to take the deposition of Witness Pietsch, as well as some other witnesses. The case was then set for trial for October 5, 1970.

On October 5, 1970, appellant's counsel announced to the court that he could not move forward on the taking of the depositions because his client was "broke." [1] On November 5, 1970, appellant's motion for continuance was granted and on November 24, 1970, an application for out of state witness was filed. The return on the subpoena reflects that the Witness Pietsch was due to be home from the service in the Marine Corps in San Diego for the Christmas holidays.

On November 27, 1970, a motion for continuance was filed stating that the witness was unavailable and that he was in San Diego. Another motion was filed on November 30, 1970, stating that the Witness Pietsch would be a material witness for the appellant; this motion was granted by the court.

On December 28, 1970, appellant was informed by the Sheriff's office in Cuero that Witness Pietsch was still stationed in California and was going to Vietnam on January 6, 1971. The record also reflects that on November 27, 1970, the trial court

---

1. The record reflects that appellant's counsel later tendered $335.00 into the registry of the court.

had again passed the case until January 11, 1971.

 It is shown by the record that appellant knew the whereabouts of such witness as early as September 8, 1970. Further, there is no showing in the record that the appellant requested the court to act on his motion prior to January 11, 1971. Also, it is noted that such motion does not meet the requirements of Article 29.07, Vernon's Ann.C.C.P., in that it does not state that the testimony "cannot be procured from any other source known to the defendant." Nor does the same inform the court that "the defendant has reasonable expectation of procuring the same at the next term of court." Under these facts, we fail to find that due diligence has been shown. E. g., White v. State, 135 Tex.Cr. R. 448, 120 S.W.2d 805. Additionally, provisions of Article 24.28, V.A.C.C.P., (Uniform Act to secure attendance of witnesses from without State) were not taken advantage of by appellant. Had such provisions been complied with, this witness could easily have been secured to testify in this case. Such Act shows California as a reciprocal member since August 27, 1937.

Finally, appellant asserts that "The district court erred in refusing to grant a mistrial when, in his argument during the guilt-innocence phase of the trial, the state's attorney commented on the failure of the appellant to testify."

The first part of the argument complained of is the following:

"Perhaps—perhaps we lawyers are given the right to talk too much to the juries sometimes but—but it's a good system and it's a good system that—that Frank Alvarez, Jr. has the right not only—well, has the absolute right to capable lawyers to represent him and to present his side of this case, and I—and I say this to you, members of the jury, and you have seen the manner in which they have represented Frank; they are extremely capable lawyers and they have done every-thing they could to confuse and to hide what Frank Alvarez, Jr., did."

At this juncture an objection was made and the court instructed the jury: "Gentlemen, this is argument and you will consider it as such."

Further, objection was made to the following argument:

"Now, you can't consider the fact that the defendant didn't testify as any evidence against him, but—but don't think for a minute that they don't have the right to put on evidence if they want to."

 Appellant moved for a mistrial and the court again instructed the jury that "This is just argument." Whereupon, appellant requested that the jury be instructed to disregard such argument and the jury was so instructed. No reversible error is shown. E. g., Gorman v. State, 480 S.W.2d 188; Ellis v. State, Tex.Cr.App., 468 S.W.2d 406.

There being no reversible error, the judgment is affirmed.