Carl Billy TIBBETTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 45957.

Court of Criminal Appeals of Texas.

May 16, 1973.

George A. Whittenburg, II, Amarillo, for appellant.

Tom Curtis, Dist. Atty. and Kerry Knorpp, Asst. Dist. Atty., Amarillo, Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for sale of marihuana wherein the punishment was assessed at eight (8) years.

Initially, appellant complains of the court's action in refusing to submit to the jury as a fact issue the question of whether the undercover agent Watson was an accomplice witness.

Lonnie Watson testified that on January 6, 1971, he was a deputy sheriff working as an undercover agent in cooperation with the Amarillo Police Department and had been working in such capacity or as an informer for several months. He related that on January 6, 1971, he approached Fletcher Senn and inquired about the purchase of some marihuana; that Senn told him that the appellant might have some, took $10.00 from him (Watson) and they then proceeded to appellant's house where the appellant gave a substance wrapped in

tinfoil to Senn, who handed the appellant the $10.00. Watson then related that Senn unwrapped the tinfoil and looked at the substance and handed it to him. He observed the odor of marihuana and stated the substance appeared to be concentrated marihuana. Senn retrieved the substance, put a piece of it in a pipe and smoked it and then passed the pipe to Tibbetts and to Watson. Watson related he puffed on the pipe but did not inhale the smoke. Subsequently, Watson recovered the substance and he and Senn left.

The chain of custody was established and the chemist identified the substance as marihuana.

Testifying in his own behalf, appellant denied ever selling marihuana to Senn or to Watson. He related that the event testified to by Watson never occurred. He acknowledged that he started using marihuana while in the military service in Vietnam and that he continued its use until sometime in January of 1971 but that he never sold marihuana; that he obtained what he needed from his roommate, Jack Lightfoot, who was a "pusher."

The defense testimony was that the sale never occurred, while testimony of the undercover agent was that he did not bring about the crime but only obtained evidence to be used against those engaging in narcotic traffic.

In Alexander v. State, 168 Tex.Cr.R. 288, 325 S.W.2d 139 (1959), this court held that an undercover "agent is not an accomplice witness so long as he does not bring about the crime, but merely obtains evidence to be used against those engaged in the traffic." See also Hooper v. State, 487 S.W.2d 349 (Tex.Cr.App.1972); Alvarez v. State, 478 S.W.2d 450 (Tex.Cr.App.1972); Ikner v. State, 468 S.W.2d 809 (Tex.Cr. App.1971), and Ochoa v. State, 444 S.W.2d 763 (Tex.Cr.App.1969).

The court did not err in failing to submit as a fact issue the question of whether Watson was an accomplice witness.

Next, appellant complains of a break in the chain of custody of the narcotic. This claim is based on Watson's testimony that Senn took the substance in the tinfoil from him and placed a piece in a pipe and put the remainder of the substance down and it was not within Watson's constant sight during the smoking of the pipe. He points to Watson's testimony that Senn had marihuana in his possession on other occasions and contends Senn could have switched substances.

It is observed that when Watson first examined the substance prior to the pipe smoking he was able to express the opinion the substance was concentrated marihuana. The fact that the substance was not in his constant sight goes only to the weight and not to the admissibility of the evidence.

Further, there was no objection on this basis when the marihuana was introduced.

Appellant also contends the State's "deliberate refusal to record testimony presented to Grand Jury was deliberate destruction and suppression of evidence in violation of the United States Constitution."

Appellant made a pre-trial motion for production of the grand jury testimony, but withdrew the same when he was informed that such testimony had not been recorded. He then filed a motion to quash the indictment and to dismiss the prosecution. He called District Attorney Curtis, who testified that there had never been a practice in Potter County to record all testimony in all cases brought before the grand jury, that it was his practice to make a record, usually by a recording machine, when a prospective defendant testified or when a witness testified and his office felt that there was a likelihood such testimony would change before the trial of the case. He further related that his practice of recording testimony had declined since one of the district judges had been ordering pre-trial production of grand jury

testimony and since he knew of no statute or other legal requirement that made it mandatory to record such testimony. The district attorney related that no record was made of the testimony given before the grand jury in the instant case.

"It is clear that the court could not make available to the appellant that which was not in existence. . . ." Smith v. State, 464 S.W.2d 855, 858 (Tex.Cr.App. 1971).

Even if the testimony had been recorded, the appellant would not have been entitled to the same in the absence of a showing of a "particularized need." Bryant v. State, 423 S.W.2d 320 (Tex.Cr. App.1968); Acuff v. State, 433 S.W.2d 902 (Tex.Cr.App.1968); Garcia v. State, 454 S.W.2d 400 (Tex.Cr.App.1970), and Brown v. State, 475 S.W.2d 938 (Tex.Cr. App.1972). There was no such showing. See also Graham v. State, 486 S.W.2d 92 (Tex.Cr.App.1972); Reed v. State, 456 S. W.2d 393 (Tex.Cr.App.1970); Polk v. State, 476 S.W.2d 330 (Tex.Cr.App.1972); Smith v. State, 455 S.W.2d 748 (Tex.Cr. App.1970); Hicks v. State, 482 S.W.2d 186 (Tex.Cr.App.1972), and Lary v. State, 475 S.W.2d 248 (Tex.Cr.App.1972).

We know of no authority, statutory or otherwise, which would require the recording of such testimony.

The court did not err in overruling the motion to quash the indictment. Further, the record does not support either a claim of destruction or suppression of evidence.

Next, appellant contends the court erred in failing to require the State to make an election prior to trial upon which of the three counts in the indictment it would proceed.

The first count alleged a sale of marihuana to Lonny[1] Watson on January 6, 1971. The second count alleged a sale of

---

1. The name is spelled "Lonnie" elsewhere in the record.

marihuana to Fletcher Senn on January 6, 1971, and the third count alleged possession of marihuana on January 6, 1971.

The proof later offered at the trial showed there was only one sale and one transaction on January 6, 1971, and, at the conclusion of the trial, the court submitted only the second count of the indictment to the jury.

Article 21.24, Vernon's Ann.C.C.P., provides:

"An indictment, information or complaint may contain as many counts charging the same offense as the attorney who prepares it, acting in good faith, may think necessary to insert, but may not charge more than one offense. An indictment or information shall be sufficient if any one of its counts be sufficient."

■ It has been held that this article does not prohibit charging several ways in which the offense was committed or charging more than one offense based on the same incident or transaction. Vannerson v. State, 408 S.W.2d 228 (Tex.Cr.App.1966); Rose v. State, 427 S.W.2d 609 (Tex.Cr. App.1968); Steambarge v. State, 440 S.W. 2d 68 (Tex.Cr.App.1969). See Hughes v. State, 455 S.W.2d 303 (Tex.Cr.App.1970).

■ The court did not err in refusing to require the State to elect prior to trial upon which count of the indictment it would proceed.

■ Appellant further contends that classification of marihuana with hard drugs such as heroin, etc., is an unreasonable and arbitrary classification and violates the federal constitution.

Reyna v. State, 434 S.W.2d 362 (Tex. Cr.App.1968), has been decided contrary to appellant's contention. See also Sanders v. State, 482 S.W.2d 648 (Tex.Cr.App.1972), and cases there cited.

■ Appellant also complains of a systematic exclusion of persons under 21 years of age from service on grand juries in violation of the federal constitution. No authority is cited.

In support of his motion to quash the indictment on this basis, the appellant offered only the testimony of an assistant district attorney that approximately 65% of defendants in Potter County charged with narcotic violations are under the age of 25 years. No evidence was offered to show a systematic exclusion of any age group from grand jury service.

Article 19.08, Vernon's Ann.C.C.P., as amended in 1969, prescribes the qualifications for a grand juror, as follows:

"No person shall be selected or serve as a grand juror who does not possess the following qualifications:

1. He must be a citizen of the State, and of the county in which he is to serve, and be qualified under the Constitution and laws to vote in said county, provided that his failure to pay a poll tax or register to vote shall not be held to disqualify him in this instance;

2. He must be of sound mind and good moral character;

3. He must be able to read and write;

4. He must not have been convicted of any felony;

5. He must not be under indictment or other legal accusation for theft or of any felony."

It is clear from the above statute that there is no age requirement so long as the individual is "qualified under the Constitution and laws to vote in said county."

The Twenty-Sixth Amendment to the United States Constitution [2] reads:

"Section 1. The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

Sec. 2. The Congress shall have power to enforce this article by appropriate legislation."

The foregoing amendment did not confer upon citizens 18 years of age or older the right to vote but simply prohibited discrimination against them on account of age. See Shelby v. State, 479 S.W.2d 31, 34 (Tex.Cr.App.1972).

It is observed that prior to the ratification of such amendment the Voting Rights Act of 1965 § 302, as amended 42 U.S.C.A. § 1973bb–1 (1970), granted the right to vote to those 18 years of age or older. In United States v. Arizona, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), the United States Supreme Court held that the 1970 amendment to the Voting Rights Act (Pub.L. 91–285, 84 Stat. 314), enfranchising 18 year old citizens in federal elections, abolishing literacy tests as requisite to vote, and abolishing state durational residency requirements was within the power of Congress to enact, but that portion of the amendment enfranchising 18 year olds in state and local elections was beyond the power of Congress to enact.

In 1971, the Texas Legislature, by virtue of S.B. 51, amended § 42a, Texas Election Code (Article 5.10a, Vernon's Ann.Texas Election Code), to read as follows:

"A person is entitled to register as a voter in the precinct in which he has his legal residence (i.e, domicile), as defined in Section 40 of this code, if:

(1) on the date of applying for registration he is a citizen of the United States and is subject to none of the disqualifications, other than nonage, stated in Section 33 of this code; and

(2) within 30 days after applying for registration he will be 18 years of age or older and will have resided in the State for one year.

However, no person may vote at any election unless he fulfills all the qualifications of an elector for that election." (Acts 1971, 62nd Leg., Reg.Sess., p. 2509, ch. 827) (See Appendix to Chapter Five, Vernon's Texas Election Code).

Such amendment became effective on August 30, 1971 and since that time 18 year old or older citizens have been qualified to vote, if meeting all other requirements.

Thus, since that date, 18 year old or older citizens have been qualified to serve on grand juries if all other requirements of Article 19.08, supra, have been met. *Cf.* Shelby v. State, supra.

The indictment in the instant case was returned on May 19, 1971, prior to the effective date (August 30, 1971) of the afore-said amendment to the Texas Election Code. Further, as earlier noted, the appellant gives no showing that there had been systematic exclusion from the grand juries in Potter County of any age group.

Appellant's contention is without merit.

■ Lastly, appellant complains that Article 725b § 1(14), Vernon's Ann.P.C., defining a narcotic drug violates the United States Constitution by an unauthorized delegation of state legislative power to the federal government. This same contention was raised in Harris v. State, 475 S.W.2d 922 (Tex.Cr.App.1972), and decided adversely to appellant's contention. We adhere to the ruling in *Harris*.

The judgment is affirmed.

2. Publication of the certifying statement of the Administrator of General Services that the amendment had become valid was made on July 5, 1971, F.R.Doc. 7–9691, 36 F.R. 12725. Texas ratified the amendment on May 5, 1971.