Hector Leyva **HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–82–00019–CR.**

Court of Appeals of Texas, El Paso.

Oct. 19, 1983.

Rehearing Denied Nov. 9, 1983.

Discretionary Review Granted March 21, 1984.

Robin Norris, El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

SCHULTE, Justice.

This is an appeal from a conviction for murder. The jury assessed punishment at ninety-nine years imprisonment. We affirm.

Ground of Error No. One contends that the court erred in denying Appellant's pretrial motion to dismiss for denial of his statutory right to a speedy trial. The operative dates are as follows:

| | |
|---|---|
| February 23, 1981 | Arrest |
| April 29, 1981 | Indictment |
| May 4, 1981 | Announcement of ready by State |
| May 12, 1981 | Arraignment; trial set for June 29, 1981 |
| June 24, 1981 | Contact with State F.B.I. witness Albrecht; conflict discovered |
| June 26, 1981 | State's First Motion for Continuance granted; trial reset to November 23, 1981 |
| November 9, 1981 (Approx.) | Contact with witness Albrecht reveals second trial conflict |
| November 23, 1981 | State's second Motion for Continuance granted; trial reset to December 7, 1981 |
| December 7, 1981 | Motion to Dismiss overruled; trial commences |

■■■ We agree with Appellant's abstract analysis of Code of Criminal Procedure Article 32A.02 in terms of aggregating periods of unreadiness between commencement and trial to determine compliance with the Speedy Trial Act. We further find that the factual application in this case which Appellant terms "generous" is in fact the most appropriate evaluation of the pretrial events. The State announced ready within the statutory limit. This announcement carries forward but for the periods of excusable unreadiness, for which the State invokes the provisions of Section 4 of the Speedy Trial Act. Delays attributable to the court's docket are not charged to the State. *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979).

Applying these principles to the present case, the only period of time clearly chargeable against the speedy trial limit is the sixty-nine days between the February 23 arrest and the May 4 announcement of ready. The periods May 4 to June 26 and August 10 (availability date of witness Albrecht after the first continuance) to November 23 are attributable to the court's docket. The remaining periods of June 26 to August 10 (forty-five days) and November 23 to December 7 (fourteen days) total fifty-nine days. Aggregated with the earlier seventy-day period, this exceeds the 120 day limit imposed by Article 32A.02. Thus, as Appellant concludes in his brief, the propriety of the State's two continuances is determinative of the speedy trial issue.

Unquestionably the State considered F.B.I. Agent Albrecht's testimony critical to its case. Furthermore, the pistol had already been returned from the F.B.I. laboratory in Washington D.C., having been examined by Albrecht alone. A substitute witness was not available, and resubmission for testing by other laboratory personnel would have occasioned further delay. First Assistant Gary Weiser testified that no subpoenae were issued for Albrecht. He further testified that formal process was never issued for F.B.I. personnel by the El Paso District Attorney's Office. The established procedure involved telephonic notification of the trial date by one of the District Attorney's investigators and by the trial prosecutor. The system had previously proven reliable. In this particular instance, when these contacts were made two to three weeks prior to the June 29 and November 23 trial dates, Albrecht was already scheduled to testify elsewhere, first in Alaska and subsequently in the Virgin Islands. As Albrecht was about to board his plane for the Virgin Islands, he was advised that his testimony in that case had been cancelled. This in no way affects the diligence or lack thereof in this case.

■■■ Appellant contends that the State was improperly granted these two continu-

ances for two reasons: 1) no issuance of formal process to obtain the witness and 2) tardy implementation of the informal local procedure for securing the witness's presence. Appellant has cited numerous case authorities upholding the denial of continuances in the absence of service of process or where attempted service was not timely. We cannot agree with Appellant's translation of this time-honored principle into an absolute requirement that formal process issue in order to secure a continuance. Even in the absence of attempted service of process, the granting of a State's motion for continuance due to the absence of a critical witness rests within the discretion of the trial court. *McClendon v. State,* 583 S.W.2d 777, 779–780 (Tex.Cr.App.1979); *Ashabranner v. State,* 557 S.W.2d 774, 778 (Tex.Cr. App.1977). Such a decision is subject to reversal only upon a showing of abuse of discretion. We find no such abuse in this case.

Appellant has amplified his position, via oral argument, that the standard of review with regard to continuance under Code of Criminal Procedure articles 29.03 and 29.04, differs from that used to evaluate a tolling of the Speedy Trial Act by a continuance granted under Article 32A.02, sec. 4(6)(A). He argues that a broader judicial discretion under the preceding two statutes may support a State continuance and yet run afoul of the latter provision due to a want of due diligence. Although Article 29.04 does speak in terms of a showing of diligence, in light of McClendon and Ashabranner, his point is well-taken. Nonetheless, it is a settled principle of law that one is not penalized for the failure to perform a useless act. The informal process utilized by the prosecuting authority had served adequately in the past. Appellant relies on cases dealing with absences primarily occasioned by lack of service. Here, we are dealing with the conflicting demands of several trials in separate jurisdictions. Had the State subpoenaed witness Albrecht in the same time frame in which they had used the less formal means, no greater success in securing his presence would have resulted due to the prior subpoenae from the Alaskan and Virgin Islands authorities.

■ This leaves the second prong of Appellant's argument—the failure to move more swiftly. The argument has an initial appeal to it. Yet on closer scrutiny, we perceive that in the context of this trial it has the effect of turning the Speedy Trial Act into a species of race-notice competition between remote prosecuting authorities, more akin to real property transactions than to the criminal law. The El Paso district attorney's office was "beaten to the punch" by the trial demands of other criminal proceedings. This is not a case where Appellant's right to a speedy trial was adversely affected by the State's inaction, allowing a witness's availability to be lost to some lesser priority such as vacation or simple non-appearance. At some point well in advance of trial, an inevitable conflict arose between the criminal proceedings in different jurisdictions over the presence of witness Albrecht. One defendant or the other would bear the burden of delay. This is not the type of delay which the Speedy Trial Act was intended to eliminate.

■ In seeking to rebut the State's showing of diligence, Appellant speculates that earlier attempts to contact Albrecht, formally or informally, might have resulted in the El Paso trial gaining a first priority status on his testimonial calendar. Such is not demonstrated by the record. In fact, Albrecht testified that his trial demands are almost seasonal in intensity and that he is more spontaneously available during the summer months, when the first trial setting took place. The State's motions aver that the conflicting requests for testimony in Alaska and the Virgin Islands arose prior to the trial settings in this case. That is nowhere rebutted in the record. Albrecht was cross-examined solely on his memory of the scheduling conflicts. He was unable to state that earlier action by the El Paso authorities would have resulted in a greater priority than the Alaskan or Virgin Islands trials. On the facts of this case, we find no abuse of discretion in granting the State's continuances. We further find that the

failure of the State to move more swiftly with formal process was harmless error under the circumstances of the case. Ground of Error No. One is overruled.

In Ground of Error No. Two, Appellant contends that the court erred in admitting into evidence his pistol, box of ammunition and blood-stained boots, seized by police at his residence shortly after the murder. Based upon information obtained at the crime scene, officers followed Appellant to his home, where he had been residing with his brother, the victim and her child. When the homicide detectives knocked on the door Appellant answered, identifying himself. He was immediately arrested. The officers entered the house. Appellant and his brother testified that they immediately began to search despite their refusal to consent and the absence of a warrant. The officers testified that they examined the interior solely to insure the well-being of the victim's young son. The officers further testified that after Appellant was removed one of their number left to obtain a search warrant and that two, Detectives Spencer and Donegan, were voluntarily admitted to the kitchen area to wait for its arrival. Appellant's brother began to prepare coffee. Detective Donegan pulled a chair out from the kitchen table and observed a closed pistol case. He and Spencer testified that the case was not opened until Donegan left and returned with a warrant. Appellant's brother testified that it was opened immediately and that the box of ammunition and bloody boots were already seized prior to any warrant being obtained.

■ The search warrant affidavit is clearly insufficient to meet either prong of the test set out in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Nor will the emergency doctrine, as applied to the safety of the child, validate the subsequent discovery of the pistol, ammunition or boots. Even if consent to entry into the kitchen and inadvertent plain view discovery of the closed pistol case were sufficiently demonstrated to legitimize seizure of the pistol, the ammunition and boots were beyond the scope of this exception to the warrant requirement.

■ Nonetheless, we find no harm in the introduction of the challenged exhibits. The erroneous introduction of inadmissible evidence does not necessitate reversal if the accused testifies about the same facts or evidence, admitting its reliability. *Jackson v. State,* 548 S.W.2d 685 (Tex.Cr.App.1977); *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr.App.1975); *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr.App.1973); *Moulton v. State,* 486 S.W.2d 334 (Tex.Cr.App.1972). These authorities also stand for the proposition that an accused does not waive his claim of harm by a defensive reference to the improper evidence which consists solely of an effort to meet, deny, or rebut it. That is not the case here. The pistol was introduced to demonstrate, through ballistic comparisons with the bullet fragment removed from the victim's head, that it was the weapon which caused her death. It also demonstrated Appellant's contact with the murder weapon. The boxed ammunition seized at Appellant's residence was metallurgically matched to the bullet fragment recovered from the body as well as to fragments removed from the lock on the bar door at the crime scene. These latter fragments were the result of subsequent discharges of the pistol. Blood samples removed from Appellant's boots were matched by enzyme groupings to the blood of the deceased. This established Appellant's proximity to the victim at the time of her injury. In his testimony, Appellant acknowledged that the weapon was his, that it was the weapon which fired the fatal shot, that he was struggling with the victim when the weapon discharged and that he then fired several shots toward the nearby bar. His testimony provided a complete voucher for the otherwise offensive evidence, to the full extent for which it was offered. His references were in no way designed to meet, rebut or deny those aspects of the State's case embodied in these exhibits. The crux of his defense was that as he and the victim were entering his vehicle, she inexplicably drew the pistol from her purse and placed it to her head.

He sought to restrain her and in the struggle, the pistol discharged, killing her. He denied that it fired as the result of any voluntary act on his part. Upon realizing that she was dead, he then purportedly fired the pistol wildly at the bar, not to dissuade potential witnesses but out of sheer anguish. Thus, Appellant's defensive posture, assumed in his own testimony, poses no limitation on the extent to which he waived harm in the introduction of the challenged exhibits. Ground of Error No. Two is overruled.

The judgment is affirmed.

OSBORN, Justice, dissenting.

I respectfully dissent. The majority opinion fairly and accurately reflects the controlling dates and time periods involved in this case. That opinion recognizes that if the periods of time resulting from the granting of the State's two motions for continuance are added to the other time chargeable to the State, the total time exceeds the 120-day limit imposed by Code Crim.Pro. Article 32A.02.

The controlling issue then turns on the effect of Section 4(6)(A) of Article 32A.02 which states:

In computing the time by which the state must be ready for trial, the following periods shall be excluded:

(6) a reasonable period of delay resulting from a continuance granted at the request of the state if the continuance is granted:

(A) because of the unavailability of evidence that is material to the state's case, if the state has exercised due diligence to obtain the evidence and there are reasonable grounds to believe the evidence will be available within a reasonable time.

In this case, we must focus upon whether the State "exercised due diligence" to obtain the testimony of the witness who was essential to their case. I dissent because I conclude it did not.

First and foremost, the State acknowledges and the majority opinion recognizes that no subpoena was ever issued for this expert witness. Thus, diligence was not shown. *Robinson v. State*, 454 S.W.2d 747 (Tex.Cr.App.1970). Although Texas has adopted the Uniform Act to Secure Attendance of Witnesses From Without State, Code Crim.Pro. art. 24.28, no effort was made to comply with the act. The first and second motions for continuance recite that the witness resides in Washington, D.C., and the District of Columbia adopted the Uniform Act in 1952. D.C.C.E., sec. 23–1501 to 1504. A party is required to comply with the provisions of the act where the witness resides in a state that has adopted the Uniform Act. *Alvarez v. State*, 478 S.W.2d 450.(Tex.Cr.App.1972).

Instead, the State in this case chose to rely upon telephonic notification of the trial date by one of the district attorney's investigators. While this method of securing the presence of an important witness may as a practical matter work very well in most cases, the code does not provide for such a substitute for the usual legal process. The law requires each party to use the means provided by law to secure the attendance of their witnesses. If one party substitutes other means, it does so at its own peril. *Winkley v. State*, 202 S.W.2d 676 (Tex.Cr. App.1947).

With regard to the first continuance, the evidence reflects that following an arraignment on May 12, 1981, the case was originally set for trial on June 29, 1981. But, apparently no contact was made with the F.B.I. office by the district attorney's investigator until June 24, 1981, at which time it was learned that the witness had a prior commitment to testify in a murder trial in Alaska. Therefore, it became necessary to file the first motion for continuance. After the court granted the first continuance, it apparently reset the case for trial on November 23, 1981. Although the First Assistant District Attorney testified otherwise, the witness, Mr. Albrecht, testified that he was notified of the November setting of the case about two weeks in advance. Of course, had he received a subpoena he would have known the date it was served and there would be no question

about the diligence used. In reaching the conclusion that the State did not use due diligence, it seems important to note that the two commitments which the F.B.I. agent was required to meet and prevented him from coming to El Paso resulted from the service of subpoenae from other jurisdictions. In those two instances, the prosecutors seemed to have exercised diligence and followed standard procedures for obtaining the appearance of an expert witness. In our case, recognized procedures were not followed and the witness was not available.

I would sustain the first ground of error, reverse the conviction and order the indictment dismissed.