Gary Mark BOOTH, Appellant,

v.

The STATE of Texas, Appellee.

No. 46456.

Court of Criminal Appeals of Texas.

Sept. 19, 1973.

Rehearing Denied Oct. 10, 1973.

Kerry P. Fitzgerald, Dallas (on appeal only), for appellant.

Henry Wade, Dist. Atty., William J. Teitelbaum, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

QUENTIN KEITH, Commissioner.

Appellant was convicted of the offense of robbery upon his plea of not guilty and his punishment assessed at confinement for life. He was represented by counsel of his own choice during the trial of the cause; but, after the return of the verdict, upon his motion, the court appointed counsel to represent him upon appeal.

On the night of October 6, 1970, Mr. and Mrs. J. L. Williams, along with their friends, Mr. and Mrs. Frederic Wagner, met at the Williamses' home in north Dallas, went to dinner, and returned about 10 p. m.

Immediately after parking their car and getting out, four masked men appeared and ordered them at gunpoint to enter the residence. The adults, along with a maid and children, were all forced to lie down upon the floor in the dining room where they were tied with neckties and sheets procured from the upper floor by the robbers. Each of the adults was forced to hand over his money, watch, and jewelry which he had upon his person—all at gunpoint—and Mrs. Williams was required to open the family safe where her jewelry was kept.

After taking thousands of dollars in jewelry, the cash, and other items mentioned, the robbers fled the scene in Mr. Williams' car, leaving the victims tied. Mr. Wagner soon released himself and the others and a prompt report of the robbery was made to the police through the use of the mobile telephone in Wagner's car, the regular telephone service in the Williamses' residence having been temporarily rendered inoperative.

None of the victims was able to identify any of the robbers. This was because the robbers were wearing what was described as "jump suits" over their regular clothes and ski masks over their faces.

On October 13, 1970, a week after the robbery, Dallas police officers went to a heavily wooded area in the rear of the River Oaks Apartments in the City of Dallas and, using sensitive metal detectors, discovered several bags containing jewelry, foreign currency, paper money, and American coins. In court, Mr. Williams identified several of the jewelry items so recovered as having been taken during the course of the robbery a week earlier. As to one piece of jewelry, his testimony was confirmed by an executive of Neiman-Marcus.

Lieutenant Day, a fingerprint expert of the Dallas Police Department, examined several of the foreign bills on the night of their discovery and testified that he found the fingerprints of one Donald Julius Loerwald upon two of the bills and a small portion of the left thumbprint of appellant upon a five dollar "Shanghai" bill. Mr. Williams had testified previously that he had procured some foreign currency while upon a trip to the Orient which was kept in his safe at home, one of which was a "Shanghai" five dollar bill.

Lieutenant Day was positive that the latent print which he discovered upon the particular piece of currency was that of appellant and, although rigorously cross-examined by counsel for appellant, maintained his position.

Primus Hilman, an accomplice witness, testified that he, Tom Patterson, Mike Brigell, Jimmy Vouras, Donald Loerwald, and appellant actively participated in the robbery, although Brigell remained with their car and did not actually go into the house. He testified that while he was guarding the victims appellant was upstairs where the jewelry and foreign currency were kept. After the robbery they all returned to Loerwald's apartment where they all may have touched the jewelry but only Loerwald and appellant touched the foreign currency.

Appellant was arrested several weeks later in Las Vegas, Nevada, in the company of Loerwald and returned to Dallas. Appellant did not testify in his own behalf and the State used a prior conviction in enhancement of the punishment.

By his first ground of error, appellant contends that the evidence is insufficient to sustain the conviction in that it fails to adequately corroborate the testimony of the accomplice Hilman. The court's charge on accomplice testimony, as well as that on the law of principals, comes to us without objection. And, from our review of the voluminous record, it is clear that the prosecution established the robbery, and through Hilman, appellant's participation therein. However, only by Lieutenant Day's testimony as to appellant's fingerprint upon the Shanghai bill is Hilman's testimony corroborated.

■ Under Art. 38.14, Vernon's Ann. C.C.P., as interpreted by the authoritative case of Cherb v. State, 472 S.W.2d 273, 279 (Tex.Cr.App., 1971):

"The test of sufficiency of corroboration of the testimony of an accomplice witness is to eliminate the evidence of the accomplice from consideration and then examine evidence of other witnesses to ascertain if there be inculpatory evidence or evidence of incriminating character which tends to connect the accused with the commission of the offense. If there is such evidence, the corroboration is sufficient, otherwise, it is not." (citations omitted)

The State did not rely upon the fingerprints alone to sustain the conviction but only to corroborate the accomplice by producing evidence of incriminating character which tended to connect appellant with the commission of the offense. In several burglary cases, the Court has held that the fingerprints of an accused, "which neces-

sarily must have been made at the time of a burglary, have been held sufficient to sustain a conviction without further evidence of identification." Roach v. State, 398 S.W.2d 560, 562 (Tex.Cr.App., 1966). See also, Howard v. State, 484 S.W.2d 903, 904 (Tex.Cr.App., 1972).

Appellant's reliance upon Dues v. State, 456 S.W.2d 116 (Tex.Cr.App., 1970), is misplaced. It was part of Dues' job to clean up around the store in the area of the broken window and he testified that he did so on the Saturday preceding the finding of the broken window upon Sunday. Although Dues' prints were found upon a part of the broken pane, there was no other evidence in the record which remotely connected him with the commission of the burglary. Judge Onion, testing the record in *Dues*, found it insufficient to exclude every other reasonable hypothesis except that of Dues' guilt.[1]

■ It was shown by the State's evidence that appellant's prints could not have been placed upon the Shanghai currency while it was in the possession of Mr. Williams; and, under the testimony of Hilman, Loerwald and appellant were the only ones handling the foreign money. This evidence, taken with the fact that the particular bill upon which the prints were found was located near Loerwald's apartment along with the jewelry taken in the robbery, is sufficient to corroborate Hilman's testimony. Ground number one is overruled.

In ground number two, appellant complains of the action of the trial court "in failing to grant appellant's motions for continuance." On February 12, 1971, appellant filed his first motion for continuance based upon the absence of two witnesses; and, on February 15, 1971, he filed a second motion for continuance contending that he had not had sufficient time to retain an expert witness to examine the

1. We take this quotation from appellant's brief: "Appellant acknowledges that in view of the testimony of the accomplice witness, he is not entitled to a charge on circumstantial evidence." We agree.

photograph of his fingerprints which he had procured. Both motions were overruled and the action of the court is made the basis of the one ground of error noted above.

■ We do not perceive reversible error. One of the witnesses desired by appellant, according to his motion, would have refuted the testimony of the State's witness LaDonna Baumgardner. This witness not having been called by the State, no contradiction was required.

■ The original motion for continuance was defective in that it did not comply with Art. 29.06, V.A.C.C.P., in several respects. The witness Paul Wyatt, according to the motion, "is believed to now live in San Antonio, or Austin or Houston," but the same does not show the diligence, if any, which had been used to secure his attendance. The facts which he expected to prove by the witness are stated only in a conclusory manner; viz., "the other [Wyatt] can establish his whereabouts that would show he [appellant] could not have participated in the offense [sic]."

Furthermore, there was no proof or affidavit from the absent witness showing what his testimony would have been had he been present. The motion was not a self-proving instrument and nothing is presented for review. Webb v. State, 460 S.W.2d 903, 905 (Tex.Cr.App., 1970); Rolling v. State, 488 S.W.2d 429 (Tex.Cr.App., 1972).

■ The second motion is likewise deficient under the statute in failing to state that " 'the defendant has reasonable expectation of procuring the same at the next term of court.' " Alvarez v. State, 478 S. W.2d 450, 452 (Tex.Cr.App., 1972).

■ This second motion filed upon the date of trial likewise reflects a want of diligence on the part of appellant's counsel. Having participated in a prior proceeding

involving the codefendant Loerwald on December 10, 1970, counsel knew that fingerprints were involved; and, additionally, they knew at least two weeks before the trial that the State was relying, at least in part, upon appellant's fingerprints. The motion fails to show the diligence required by the statute. Kelly v. State, 471 S.W.2d 65, 66 (Tex.Cr.App., 1971). Ground number two does not reflect error and is overruled.

Next, appellant complains of the argument of State's counsel on the guilt-innocence stage of the trial. John David Hay was a defense witness brought to impeach the testimony of the accomplice witness Primu Hilman. Hay and Hilman were cellmates in the jail and the substance of Hay's testimony was that Hilman was trying to work out a "deal" on his numerous indictments and that such was the motive which prompted him to turn State's evidence in the instant case.

■ It developed upon cross-examination that Hay had been prosecuted by the same assistant district attorneys who were trying the appellant in this case. He was asked for what reason he was in jail at the time and answered:

"I have two cases. I have a burglary case out of Wichita Falls for four years and I have an armed robbery case of which these two gentlemen [assistant district attorneys present] prosecuted me, and I received 100 years for the English robbery in 1969."[2]

In argument, State's counsel said:

"He [Hay] wasn't out at the English home or our home with a gun in his hand. I doubt if he would be so funny to us if he appeared the way he did to Mr. and Mrs. English. We couldn't go into what he did to Mr. and Mrs. English that the jury gave him a hundred years, that the jury gave him."

---

2. Appellant's counsel had represented Hay in the English robbery case which was then upon appeal, a fact made known to the jury by stipulation. See also, Hay v. State, 472 S.W. 2d 157 (Tex.Cr.App., 1971).

Appellant's prompt objection that the argument was prejudicial was overruled.

Although this Court has had occasion, in several recent cases,[3] to admonish prosecuting attorneys to observe the rules in making their jury arguments, we do not find a case precisely in point upon either complaint. Appellant has cited three cases[4] but we do not find any of them to be in point upon his ground three, the argument relating to the witness Hay. Another case relied upon by appellant, Linzy v. State, 478 S.W.2d 950 (Tex.Cr.App., 1972), is more nearly in point but does not support the position taken by appellant. The language quoted by appellant from *Linzy* (which, in turn, was from 56 Tex. Jur.2d Trial, § 271, p. 631) did no more than reiterate the well-established rule that counsel must confine the argument to the record and that it is improper to make reference to evidence which is not inferable from the record.

The State argues that the remarks concerning Hay amounted to a reasonable deduction from Hay's own testimony that he was convicted of armed robbery in the English case, citing Mauldin v. State, 463 S.W.2d 10, 13 (Tex.Cr.App., 1971), and Jefferson v. State, 452 S.W.2d 462 (Tex. Cr.App., 1970). Obviously, the jury knew that Hay was not on trial—he had already been tried. State's counsel told the jury the self-evident fact—that he couldn't go into what Hay did to the English people. It is also clear that armed robbery aggravated to such an extent that a jury assesses the punishment at an even century's confinement is no "funny" matter.

Having reviewed the record as a whole, we are unable to find that reversible error is presented by ground number three and it is overruled.

■ In a separate ground of error, appellant also claims that the State's counsel

injected unsworn statements of fact and personal opinion in his argument at the guilt-innocence phase of the trial. State's counsel argued:

"It would be terrible for you to find this man not guilty under this evidence.

"MR. CHAMPION [appellant's trial counsel]: Your Honor, we object to the prosecutor's opinion on the guilt of the Defendant. That is prejudicial to his rights.

"THE COURT: Overruled.

"MR. SPARLING [State's counsel]: Find him guilty because the facts show him to be guilty. Thank you very much for your attention, and good luck to you."

This isolated sentence selected by appellant as his ground number four does not reflect the context in which the argument was made. When the whole argument is considered, as we have done, no error is reflected. It was a plea for a finding of guilt in the context of a plea for law enforcement. Cf. Hendrix v. State, 474 S. W.2d 230, 233 (Tex.Cr.App., 1971). See also, Myers v. State, 468 S.W.2d 847, 848 (Tex.Cr.App., 1971).

We have examined the cases relied upon by appellant [e. g., Cole v. State, 171 Tex. Cr. 255, 347 S.W.2d 719 (1961)] and remain unpersuaded that reversible error is presented. Ground four is overruled.

■ Ground number five complains that the interrogation of Hay as to why he was in jail constituted reversible error because the record shows, and the prosecutor asking the questions actually knew, that the conviction in the English case (100 years for armed robbery) was not final since it was upon appeal. It is only fair to state that such facts were equally well known to appellant's trial counsel since they had represented Hay in that case and were even then appealing the case.

3. See, e. g., Stearn v. State, 487 S.W.2d 734, 736 (Tex.Cr.App., 1972); Washington v. State, 488 S.W.2d 445, 447 (Tex.Cr.App., 1972); Hodge v. State, 488 S.W.2d 779, 782 (Tex.Cr.App., 1972); Lott v. State, 490 S.W. 2d 600, 601 (Tex.Cr.App., 1973).

4. Porter v. State, 154 Tex.Cr. 252, 226 S.W. 2d 435 (1950); Priest v. State, 162 Tex. Cr. 66, 282 S.W.2d 390 (1955); and Martinez v. State, 169 Tex.Cr. 151, 332 S.W.2d 718 (1960).

The fifth question asked by appellant of Hay established that he was "an inmate right now in the jailhouse upstairs," but the reason was not brought out. Upon cross-examination, State's counsel propounded an innocent appearing question: "Tell the jury what you are in jail for and for how long." This Hay proceeded to do in the language quoted in our consideration of ground three, supra. No objection was made to the question asked or of the answer given by Hay. The first complaint is found in appellant's brief filed a year and a half after the occurrence.

■ ■ The rule is well established that "[f]ailure to object when evidence is offered precludes review by this court." Palmer v. State, 475 S.W.2d 797, 800 (Tex.Cr.App., 1972). Having made no objections at the time, any error in admitting the testimony has been waived. Lopez v. State, 468 S.W.2d 365, 367 (Tex.Cr.App., 1971). No attempt has been made to show that appellant did not have an opportunity to object at the time the evidence was introduced. Thus, no error is presented by ground number five. Cf. Brown v. State, 460 S.W.2d 925, 927 (Tex.Cr.App., 1970).

Having considered all of the grounds of error presented in accordance with Art. 40.09, § 9, V.A.C.C.P., supra, and finding no reversible error, we would normally affirm the judgment without further comment. However, on November 27, 1972, appellant, then being incarcerated in the United States Penitentiary at Leavenworth, Kansas, filed, pro se, a supplemental brief attempting to assert a "Ground of Error No. 7" which we quote in the margin.[5]

It is obvious that the point is multifarious. Furthermore, the record was closed and approved by the trial court on June 7, 1972. Art. 40.09, § 7, V.A.C.C.P. Appellant's brief prepared by his appointed appellate counsel, after several extensions, was filed on October 27, 1972, and the State's reply brief filed on November 22, 1972. The trial court refused to grant the new trial on November 28, 1972, and the entire record was lodged in this Court on December 7, 1972. This being a pro se brief by a prisoner, albeit one who has had excellent representation at all stages of the proceedings, we will consider the constitutional questions presented.

■ In disposing of the claim of an illegal search, we note that there is no evidence in the record that appellant was present at the time the search was made, had any control, or right of use of the premises which were searched. Thus, "[t]he record does not support the claim that appellant had standing to question the legality of the search." Holcomb v. State, 484 S.W.2d 929, 933 (Tex.Cr.App., 1972). No error is reflected by this pro se complaint.

Returning to appellant's contention that the warrant of arrest was defective, we note that the State did not offer any evidence seized at the time of the arrest in Las Vegas. The warrant was regular on its face and was supported by a valid affidavit of a police officer made before a magistrate, all in compliance with the provisions of Art. 15.05, V.A.C.C.P. No error is shown. Holcomb, supra, at p. 934.

Appellant's pro se points are overruled.

■ ■ We find in our record what purports to be an amicus curiae brief filed by Joe B. Champion, Jr., one of appellant's retained trial attorneys who participated in the trial of the cause below. It raises questions concerning the record in the case, as certified by the trial judge, and is supported by counsel's affidavit as to certain happenings in the trial court. We are not authorized to consider documents or affidavits attached to appellate briefs as part of the record. Harris v. State, 453 S.W.2d 838, 839 (Tex.Cr.App., 1970).

5. "The trial court committed reversible error in admission of evidence and testimony obtained relative to arrest warrant and search and seizure warrant issued and executed without probable cause."

■■ The office of amicus curiae is to aid the court and it cannot be subverted to the use of a litigant in the case. Olcott v. Reese, 291 S.W. 261 (Tex.Civ.App., Beaumont, 1927, no writ). Having been employed by appellant during the trial, counsel may not assume the office of amicus curiae. Walker County Lumber Co. v. Edmonds, 298 S.W. 610, 612 (Tex.Civ. App., Beaumont, 1927, no writ). See also, 3 C.J.S. Amicus Curiae § 3, p. 1048 (1936).

We are in accord with the statement made by the Supreme Court of Wisconsin in Silverberg v. Industrial Commission, 24 Wis.2d 144, 128 N.W.2d 674, 20 A.L.R.3d 588, 598 (1964):

"The brief seeks to challenge the validity of testimony in the record by statements and assertions. This is not a proper function of amicus curiae."

Having reviewed the record and all of the briefs on file and finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.