*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

**MEMORANDUM OPINION**

No. 04-07-00456-CR

Mukul **AHMED**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2005-CRM-640-D3
Honorable Elma Salinas Ender, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Alma L. López, Chief Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:  October 1, 2008

APPEAL ABATED; REMANDED

On appeal, Mukul Ahmed challenges the legal and factual sufficiency of the evidence to support his conviction for attempted murder, and the trial court's assessment of restitution. We overrule Ahmed's sufficiency challenge, but because we hold the restitution order is not supported by a factual basis, we set aside the amount of restitution, abate this appeal, and remand the cause to the trial court for a hearing to determine a just amount of restitution, if any.

**FACTS AND PROCEDURAL HISTORY**

On an early Sunday evening, Gustavo Cardenas, the complainant, stopped at Bengal's Grocery to buy a six-pack of beer after fishing all afternoon with family members. A dispute arose over payment for the beer, and Mukul Ahmed, the store owner, followed Cardenas out of the store and onto the front sidewalk where Ahmed shot Cardenas four times. Cardenas was hospitalized for eight weeks. Ahmed was charged with the second degree felony offense of attempted murder. At trial, Ahmed asserted that he was protecting himself and his property. A jury found Ahmed guilty of attempted murder as charged, and recommended imposition of a ten-year sentence, probated, and assessment of a $5,000 fine. The trial court followed the jury's recommendation and sentenced Ahmed to ten years' imprisonment, suspending the sentence and placing him on community supervision for a period of ten years and assessing a $5,000 fine.[1] In addition, the court assessed $198,200.92 in restitution payable to Laredo Medical Center. Ahmed filed a motion for new trial, which was overruled by operation of law. Ahmed timely appealed.

**ATTEMPTED MURDER – SUFFICIENCY OF THE EVIDENCE**

In his first two issues, Ahmed contends the evidence is legally and factually insufficient to support his conviction for attempted murder. Specifically, Ahmed asserts the evidence failed to prove beyond a reasonable doubt that he had the specific intent to kill at the time he shot Cardenas. In reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense

---

[1] We note that the trial court's judgment erroneously states that Ahmed pled guilty to attempted murder, and instruct the trial court to correct this clerical error by the entry of a judgment *nunc pro tunc*.

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The jury is permitted to make reasonable inferences from the evidence, and, as the trier of fact, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Mosley v. State*, 983 S.W.2d 249, 254-55 (Tex. Crim. App. 1998). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). In reviewing factual sufficiency, we consider all the evidence in a neutral light, giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We will reverse the conviction only if the evidence in support of the verdict, although legally sufficient, is so weak that the verdict is clearly wrong and manifestly unjust, or if, considering conflicting evidence, the verdict is outweighed by the great weight and preponderance of the evidence. *Id.*; *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

To obtain a conviction for attempted murder, the State must prove that the defendant, with the specific intent to commit murder, did an act amounting to more than mere preparation that tended, but failed, to effect the commission of the intended murder. TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003); *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. 1984) (opin. on reh'g) (holding specific intent to kill is a necessary element of attempted murder). A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes an individual's death. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). In this case, the indictment alleged that Ahmed, with the specific intent to murder Cardenas, did an act, to wit:

discharging a firearm at Cardenas, which amounted to more than mere preparation and that tended but failed to effect the murder. A person acts with "intent" with respect to the nature or result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). It is well established that the trier of fact may infer intent from the acts, words, and conduct of the defendant. *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.). Moreover, the specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993); *Godsey v. State*, 719 S.W.2d 578, 580-81 (Tex. Crim. App. 1986). "Serious bodily injury" means bodily injury that creates a substantial risk of death, or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon Supp. 2008).

Here, the trial evidence was undisputed that Ahmed knowingly shot Cardenas four times on the sidewalk outside his store; thus, the only disputed issue was Ahmed's intent when he fired the shots. First, we will briefly summarize the evidence concerning the facts and circumstances of the shooting, and then examine the evidence from which Ahmed's intent could be inferred. The evidence established that when Cardenas came to the store counter to pay for a six-pack of beer, he placed the money on the counter and Ahmed informed him that he was short by some change. Cardenas testified he left the money on the counter, told Ahmed he would get the change from the ashtray in his car which was parked in front of the store, picked up the beer, and started to leave the

-4-

store.  Ahmed, on the other hand, testified that, after he told him he was short, Cardenas threw some change on the counter, in response to which Ahmed gave him his money back, told Cardenas he would not sell him the beer, and instructed him to leave the store; Ahmed stated that Cardenas picked up the beer and started to leave the store.

The evidence was undisputed that Ahmed then jumped over the counter, and blocked Cardenas from exiting through the front door; they were arguing, pushing and grabbing, before Ahmed took away the six-pack and set it down inside the store.  Ahmed testified that Cardenas hit him during this exchange and then went out the front door; he followed Cardenas outside to make sure he did not damage his property; Cardenas attacked him outside, hitting Ahmed in the eye, saying "you want to kill me . . . I['ll] kill you;" Ahmed then grabbed his gun from his back pocket and "started firing to go away from him."  Cardenas, however, testified that he had walked out of the store and reached the passenger side of his car when Ahmed struck first, hitting him from behind on the head with something hard; then, Cardenas turned and punched Ahmed in the face with his fist. Cardenas testified that he "was going to go after him [Ahmed] again but saw he had a gun." Cardenas stated that when he saw the gun, he asked Ahmed whether he was going to shoot him, at which point Ahmed shot him once.  Cardenas said he fell to the ground, and Ahmed then shot him three more times while he was on the ground.  Ahmed testified he shot Cardenas to protect himself; he was not aiming at any particular body part when he fired at Cardenas four times; he did not intend to kill Cardenas; and he knew Cardenas was a gang member and had a bad reputation in the community.  Ahmed went inside the store and called 911 immediately after the shooting.  Cardenas testified, and several photographs admitted into evidence showed, that he was shot twice in the head,

once on the left side of his chest, and once in the knee. He stated he has trouble remembering things now. A videotape was introduced, but it only shows the argument inside the store and not the shooting in front of the store, although the four shots can be heard on the tape. There was no evidence that Cardenas was armed with any type of weapon.

In addition, an eyewitness who lived across the street testified that she saw Ahmed follow Cardenas out of the store and shoot him once, causing him to fall to the ground. She stated that after the first shot, Ahmed "turned both ways" on the street, and then shot Cardenas three more times while he was on the ground before walking back into the store. She also testified, however, that Cardenas's car was not parked in front of the store at the time of the shooting. Cardenas's uncle, Jesus Perales, who testified he was waiting in the car parked out front, stated that he saw Ahmed and Cardenas arguing on the sidewalk, exited the vehicle, and stepped between them; he stated that Ahmed then fired at Cardenas over Perales's shoulder, striking Cardenas and causing him to fall to the ground before firing more shots.

Turning to the element of Ahmed's intent, we conclude that the evidence is legally and factually sufficient to support a finding that Ahmed used a deadly weapon, a handgun, in a manner that was capable of causing serious bodily injury to Cardenas, and thus supports a reasonable inference of Ahmed's intent to kill. *See Adanandus*, 866 S.W.2d at 215; *see also Godsey*, 719 S.W.2d at 581 ("[i]f a deadly weapon is used in a deadly manner, the inference is almost conclusive that [the defendant] intended to kill . . ."). Ahmed did not merely exhibit the loaded gun, but intentionally pointed and fired it at Cardenas – not once, but four times. Ahmed testified that his gun requires the trigger to be pulled each time in order to fire a bullet. An investigator testified that the

bullets were hydroshock bullets which "tear everything up" in the body; Ahmed stated he simply asked for the "best" bullets when he purchased the gun. Although Ahmed testified that he did not specifically aim at Cardenas's "head, heart or eyes," he did not intend to kill him, and called 911 immediately after the shooting; he also admitted that he pointed and fired the gun at Cardenas four times at close range, including three shots after he had fallen to the ground. In addition, Perales stated that Ahmed had to fire over his shoulder in order to hit Cardenas with the first shot, and the neighbor observed Ahmed turn both ways before firing the three additional shots at Cardenas on the ground. Cardenas was wounded twice in the head, and once in the left chest area – the sites of major life-sustaining organs; he testified he spent eight weeks in the hospital and still suffers from memory loss. Having reviewed all the evidence, we hold there was legally and factually sufficient evidence from which the jury could have reasonably inferred Ahmed's intent to kill Cardenas based on his actions. *Adanandus*, 866 S.W.2d at 215; *Godsey*, 719 S.W.2d at 580-81. Accordingly, we overrule Ahmed's issues challenging the sufficiency of the evidence.

## RESTITUTION

As to the restitution, payment of which is a condition of his community supervision, Ahmed asserts the trial court erred in ordering him to pay $198,200.92 in restitution to Laredo Medical Center, in part because there is no evidence in the record to support the amount.[2] We agree. The trial court has authority to order a defendant to make restitution to a victim of the offense of

---

[2] Ahmed also asserts the restitution order is erroneous because Laredo Medical Center is not the direct victim of the offense. If there is sufficient evidence in the record, the court may order that restitution be made to a third party who has compensated the victim for his losses, *i.e.*, medical expenses, sustained as a direct result of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(f)(1) (Vernon Supp. 2008); *see also Narvaez v. State*, 40 S.W.3d 729, 730 (Tex. App.—San Antonio 2001, pet. dism'd) (holding trial court did not abuse its discretion in ordering appellant to pay restitution to hospital for victim's medical bills).

conviction as a condition of probation, but the amount of restitution must be just and it must have a factual basis with regard to the loss sustained by the victim. TEX. CODE CRIM. PROC. ANN. arts. 42.037(a), 42.12 § 11(a),(b) (Vernon Supp. 2008); *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999); *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980) (due process requires that evidence must exist in the record to show the restitution amount has a factual basis). A trial court abuses its discretion when it fails to abide by these guidelines. *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd). Here, the appellate record is silent as to how the amount of restitution was calculated, and does not provide any factual basis to support the amount ordered or to connect it to a financial loss sustained by Cardenas. There is no evidence in the record as to the dollar amount of medical expenses incurred by Cardenas and no stipulation by Ahmed. To the contrary, at sentencing, Ahmed objected to the imposition of any amount of restitution. The State argues on appeal that the restitution order is supported by the pre-sentence investigation report, and has attached a copy of the report to its brief. The pre-sentence investigation report does address the restitution issue. However, it was not admitted into evidence and thus is not contained in the appellate record; therefore, we may not consider it. *See Booth v. State*, 499 S.W.2d 129, 136 (Tex. Crim. App. 1973) (appellate court is not authorized to consider documents attached to appellate brief which are not part of the record); *see also Miranda v. State*, 813 S.W.2d 724, 738 (Tex. App—San Antonio 1991, pet. ref'd). Because there is no evidence in the record to support the restitution order, we hold the trial court abused its discretion.

As to the proper remedy, our Court of Criminal Appeals has stated that, "where restitution is a lawful condition of community supervision, but the specific amount imposed by the trial court is unsupported by the record, . . . the proper remedy is to abate the appeal, set aside the amount of

restitution, and remand the cause for a hearing to determine a just amount of restitution." *Barton v. State*, 21 S.W.3d 287, 289 (Tex. Crim. App. 2000) (citing *Cartwright*, 605 S.W.2d at 289).

## CONCLUSION

Based on the foregoing analysis, we overrule Ahmed's challenges to the sufficiency of the evidence to support his conviction, and set aside the amount of restitution, abate the appeal, and remand the cause to the trial court for a hearing to determine a just amount of restitution, if any. *Barton*, 21 S.W.3d at 290.

Phylis J. Speedlin, Justice

DO NOT PUBLISH