

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00093-CR

DEMARIUS DEJUAN TAYLOR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 20F0475-202

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

A Bowie County jury convicted Demarius Dejuan Taylor of murder,[1] sentenced him to life in prison, and fined him $10,000.00. On appeal, Taylor claims that the trial court erred in denying his motion for a continuance that was filed around two weeks before the trial was scheduled to begin. Because we find that the trial court did not abuse its discretion in denying Taylor's motion for continuance, we affirm the trial court's judgment.

## I.      Background

On the afternoon of March 31, 2020, Taylor's sister, Bosnia, was in a fist fight with another young woman. As the fight was winding down, a man punched Bosnia in the face. Bosnia reported this to Taylor. Later that night, two vehicles with about ten people went to the home of the murder victim, Notoryous Crabtree. Another fight broke out among perhaps twenty or more people. Near the end of the second fight, Bosnia saw Taylor shoot a pistol in the direction of the crowd. Crabtree's uncle saw Taylor shoot Crabtree. It was generally agreed among the parties that a young man named Edmondae Fields[2] was in the vehicle that transported Taylor to the scene of the second fight and ultimate killing.

A few days after the shooting, Taylor was arrested and charged with the murder of Crabtree. The trial court set the case for trial on May 25, 2021.

---

[1]*See* TEX. PENAL CODE ANN. § 19.02(b).

[2]We use the spelling of Fields's name from the motion for continuance.

**II.     The Trial Court Denied Taylor's Motion for Continuance**

On May 12, 2021, Taylor filed a motion for continuance, which claimed that two days prior, for the first time, Taylor told his attorney about another person, Fields, who Taylor claimed was the shooter. A hearing on the motion was held on May 17, 2021.[3]

At the hearing, Taylor presented testimony from his mother, Ashley Gulley, who testified to the following:

- She received a phone call from Fields—in August or September 2020—and he said he was "sorry";[4]

- That phone call lasted twenty-three seconds;

- Fields and her son "both have little facial hairs growing right here" and wore their hair in dreads; and

- She received Facebook messages from Fields around that time.

According to Gulley, Fields wrote her on Facebook and asked for contact information for Taylor's attorney. As proof that the communications took place, two screen shots of Gulley's phone showing Facebook messages were produced as exhibits at the hearing. A third screen shot that showed Fields's profile page was also introduced as an exhibit. Gulley verified that Fields's name on Facebook was Stanka Velli. Yet, the profile photo of Velli was very blurred. It appeared to show a "black male['s]" face, but the image was barely sufficient to suggest that much.

---

[3]There is a discrepancy in the reporter's record. The title page of the volume transcribing the motion for continuance hearing says it reflects a proceeding on May 10—two days before the motion was filed. The reporter's master index volume, though, shows the hearing on a continuance was held on May 17. This comports with a comment from the trial court during the hearing, that the case was "currently set for jury selection next Tuesday, May the 25th."

[4]Gulley testified that Fields told her, "Ms. Ashley, I'm sorry" and "I'm just sorry, Ms. Ashley; I'm just sorry."

3

The two messages showed a text conversation between Fields and Gulley that started on August 13, 2020, at 1:35 p.m. First, Fields said that he would call Gulley later for the address to Taylor's attorney's office. The next entry showed a missed call from Fields to Gulley on August 20 at 3:16 p.m., and then a note from Gulley saying that she called him back and for him to call her when he was ready. About an hour and a half later, Fields wrote back and asked for the attorney's phone number. Gulley replied with the name and phone number of Taylor's trial attorney. Fields asked who was testifying on Taylor's behalf. Gulley responded, "No one."

Shortly after the messages and other exhibits were offered and admitted, Taylor's attorney told the trial court that he had not been contacted by Fields.

In her testimony, Gulley said that Fields lived with his mother in Ashdown, Arkansas.[5] Gulley had known Fields since he was a boy; Fields was Taylor's age. Taylor's counsel posed the following to Gulley: "Now, you know that I have hired here in the last few days a private investigator, a man named Ronnie Sharp to try and find [Fields], correct?" Gulley agreed. Counsel next asked, "I've shared with you today that he did today go to see the mama in Ashdown, Arkansas, who indicated that she does not know where he is and cannot find him, correct?" Gulley again agreed. There was also testimony that Fields was on parole in Arkansas.

On cross-examination, the State pointed out that the offense report stated that Fields was in the vehicle with Taylor. Gulley conceded that Fields never told her that he was the shooter. When asked where she was getting her information that Fields was the shooter, Gulley

---

[5]Ashdown, Arkansas, is approximately 19.5 miles north of Texarkana, which straddles the state line between Texas and Arkansas.

responded, "From other people. . . . I guess people he done talked to." Yet, the only person Gulley identified was Fields's former girlfriend, a woman named Mya Draper.

Later, under questioning from Taylor's counsel, Gulley said that Draper had sent Gulley a message that "[Edmondae] Fields rather shoot someone than fight someone." Pressed on the matter, Gulley twice more stated that Fields never told her he was the shooter; she just believed "that he [knew] something."

After hearing Gulley's testimony, the trial court denied the motion for continuance.

## III. The Trial Court Properly Denied the Motion for Continuance Because it Was Insufficient

"The trial court's ruling on a motion for continuance is reviewed for abuse of its discretion." *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (per curiam). "To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion." *Id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 29.06.

Because Taylor's motion was prompted by what he asserted was an absent witness, he was required to make certain particular showings to the trial court.

> When the defendant's motion for continuance is based on an absent witness, it is necessary to show (1) that the defendant has exercised diligence to procure the witness's attendance, (2) that the witness is not absent by the procurement or consent of the defense, (3) that the motion is not made for delay, and (4) the facts expected to be proved by the witness. It must appear to the trial court that the facts are material. Mere conclusions and general averments are not sufficient for the court to determine their materiality, and the motion for continuance must show on its face the materiality of the absent testimony.

*Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005) (footnotes omitted) (citations omitted). Between his motion and the evidence adduced at the hearing, Taylor's motion fell short of those requirements on several fronts.

### A. Diligence Not Shown

According to his motion, Taylor's attorney learned that Fields was a potential witness on May 10, 2021, in a conversation with Taylor. Counsel elicited affirmative answers from Taylor's mother that counsel had retained a private investigator who went to the home of Fields's mother, and the mother did not know Fields's whereabouts. Taylor also elicited testimony that Fields was on parole in Arkansas.

Even so, we cannot say that this showed diligence in trying to locate Fields. There was no testimony from the investigator. No evidence was offered as to how many times or on what occasions the investigator tried to locate Fields. There was also no evidence establishing that Fields was in fact on parole. Nor was there any evidence that the investigator contacted Fields's supervising officer. *See Booth v. State*, 499 S.W.2d 129, 133 (Tex. Crim. App. 1973) (diligence not shown where motion for continuance only stated that the witness was "'believed to . . . live in San Antonio, or Austin or Houston,' but the same does not show the diligence, if any, which had been used to secure his attendance").

### B. Absence Not Attributed to Defendant

The movant must also demonstrate "that the witness is not absent by the procurement or consent of the defense." *Harrison*, 187 S.W.3d at 434. Taylor was silent on this factor in his motion and at the hearing.

6

### C. No Showing of Evidence that Fields Would Provide

In *Harrison*, "no evidence was presented" as to whether the purported witness "was willing to testify or whether he had any relevant testimony to offer." *Id.* The same is true here. Taylor brought forth only conjecture and surmise that Fields might have some information about the events leading to and surrounding the murder. Gulley said that she thought Fields was the shooter. But when asked directly about her personal knowledge, Gulley said four times that no one had told her that Fields had confessed either to other persons or to her. Rather, she said that she believed Fields knew something about the shooting. It was not disputed that Fields was among several people at the scene.

Additionally, the motion was not sworn to by a person with personal knowledge, as required by statute. *See* TEX. CODE CRIM. PROC. ANN. art. 29.08; *Ikner v. State*, 468 S.W.2d 809, 810 (Tex. Crim. App. 1971).

For these reasons, we find that the trial court did not abuse its discretion in denying Taylor's motion for continuance.

## IV. Conclusion

As a result, we affirm the trial court's judgment.


                          Scott E. Stevens
                          Justice

Date Submitted:     April 11, 2022
Date Decided:       June 3, 2022

Do Not Publish